United States District Court
Southern District of Texas
**ENTERED**
February 27, 2017
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Criminal Action No. H-12-87 |
| v. | § | |
| | § | Civil Action No. H-15-2052 |
| ROBERT D. KING. | § | |

## MEMORANDUM OPINION AND ORDER

Defendant, a federal inmate proceeding *pro se*, filed this section 2255 motion challenging his conviction and sentence. (Docket Entry No. 95.) The Government filed a response in opposition (Docket Entry No. 110), to which Defendant filed a reply (Docket Entry No. 112).

Based on consideration of the motions, the responses, the pleadings, the record, and the applicable law, the Court **DENIES** the section 2255 motion and **DISMISSES** this proceeding, as follows.

### I. BACKGROUND AND CLAIMS

On February 6, 2013, Defendant pleaded guilty to one count of conspiracy to commit mail and wire fraud, in violation of 18 U.S.C. § 1349. The plea was entered pursuant to a counseled Rule 11(c)(1)(A) Plea Agreement. The Court sentenced Defendant in an amended judgment to 63 months' imprisonment with three years' supervised release and restitution in the amount of $266,627. The amended judgment was imposed November 24, 2014, and entered June 16, 2015. No notice of appeal was filed.

One month after entry of the amended judgment, Defendant filed the instant section 2255 motion.[1] He claims counsel was ineffective in

1. failing to move to dismiss the indictment for violation of the Speedy Trial Act;

2. failing to investigate the case before advising him to plead guilty;

3. inducing him to sign a plea agreement that contained factual stipulations enhancing his sentence;

4. failing to make meritorious arguments for a downward departure; and

5. failing to object to the Government's purported breach of the plea agreement in not recommending a low-end Guideline sentence.

In its response, the Government submits the affidavits of defense counsel Richard Kuniansky and Grant M. Scheiner, and argues that Defendant's claims have no merit.

## II. LEGAL STANDARDS

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to section 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the district court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack.

---

[1] Defendant informed the Court that he intended to supplement his section 2255 motion upon his receipt of certain documents. (Docket Entry No. 96, p. 24.) Although the Court has provided Defendant a reasonable time to submit the supplement, no supplement has been filed. To the contrary, on January 17, 2017, Defendant asked the Court to rule on the merits of his motion as soon as practicable. (Docket Entry No. 120.) Thus, it appears that Defendant no longer intends to supplement his motion, and this proceeding is ripe for disposition.

28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure, and cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). Moreover, a defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both cause for his procedural default, and actual prejudice resulting from the error. *Placente*, 81 F.3d at 558.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

The United States Supreme Court's decision in *Strickland v. Washington* provides the familiar two-pronged test for establishing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984). In the context of sentencing, the movant must demonstrate a reasonable probability that, but for counsel's errors with respect to sentencing matters, he

would have received less time in prison. *United States v. Grammas*, 376 F.3d 433, 438 (5th Cir. 2004).

## IV. ANALYSIS

Defendant claims that defense counsel were ineffective in the following particulars.

A.  Speedy Trial Act

Defendant argues that his first attorney should have moved to dismiss the indictment based on violations of the federal Speedy Trial Act. As correctly argued by the Government, Defendant's guilty plea waived this claim. A guilty plea is an admission by a criminal defendant that he committed the charged offense. *North Carolina v. Alford*, 400 U.S. 25, 32 (1970); *Taylor v. Whitley*, 933 F.2d 325, 327 (5th Cir. 1991). A guilty plea waives all nonjurisdictional defects in the prior proceedings except claims of ineffective assistance of counsel relating to the voluntariness of the guilty plea. *United States v. Daughenbaugh*, 549 F.3d 1010, 1012 (5th Cir. 2008); *Smith v. Estelle,* 711 F.2d 677, 682 (5th Cir. 1983). That counsel requested and obtained a trial continuance nearly one year prior to his entry of a guilty plea is neither a jurisdictional defect nor a claim of ineffectiveness related to the voluntariness of the subsequent plea. As a result, this claim has been waived.

Regardless, the claim has no merit. In responding to Defendant's argument, counsel Richard Kuniansky testified in his affidavit as follows:

> I was the initial trial counsel for [Defendant]. I represented him pre-indictment and in the initial stages after his indictment. I represented him from on or about February 9, 2010 to on or about July 3, 2012 when an order was entered granting Attorney Grant Scheiner's motion to substitute.
>
> I filed a motion for continuance on March 8, 2012 requesting a continuance of at least 120 days. The reasons for filing this motion were: (i) I was scheduled for trial in a 4 defendant case in federal court and (ii) to have time to review the government's discovery which I estimated to be approximately 60,000 pages.
>
> I have no independent recollection of whether I discussed the motion for continuance in advance with [Defendant]. However, in this case, as in all cases I handle, I consider it my professional duty to obtain complete discovery from the government and to carefully review it. In fact, in my opinion, it would have been ineffective assistance of counsel to not do so. I recall discovery in this case came on a CD whose content I had printed by a copy service. As I recall, the discovery consisted of approximately 60,000 pages, which I reviewed.
>
> On March 13, 2012, I mailed to [Defendant] a copy of the order continuing his case. The order states that "[Defendant's] motion for continuance is granted. Trial in this case is scheduled for October 22, 2012." At no time did [Defendant] voice displeasure over me filing a motion for continuance. In fact, the first time I heard that was a concern of his was when I received a telephone call from [a D.O.J. attorney] on September 16, 2015, advising me that one of the claims made by [Defendant] in his section 2255 action was that I did not advise him I was filing a motion for continuance and violated his rights under the Federal Speedy Trial Act.

(Docket Entry No. 110, Exhibit.)

The record shows that Defendant was arraigned on a six-count indictment on February 22, 2012, and that he pleaded not guilty through retained counsel, Robert Kuniansky. Defendant was released on bond, and a jury trial was set for April 9, 2012. On March 8, 2012, Defendant moved for a continuance to allow counsel time for trial

preparation. In the motion, counsel stated that there was "woefully inadequate [time] to review the discovery in [Defendant's] case, contact witnesses and perform an independent investigation." (Docket Entry No. 19, ¶ 5.) Counsel further stated that it would take "a considerable period of time to digest the discovery" in Defendant's case, which involved a six-count indictment alleging seven year's of criminal conduct by Defendant, with voluminous discovery of some 60,000 pages of documents and numerous prospective witnesses. (*Id.* at ¶¶ 1–3.) Counsel requested "continuance of at least 120 days from the presently scheduled trial date of April 10, 2012, and preferably until November, 2012." (*Id.* at ¶ 6.) The motion was unopposed, and this Court granted the continuance on March 9, 2012, resetting trial for October 22, 2012.

On June 14, 2012, the Court entered an order finding that "a continuance from March 9, 2012, through October 22, 2012, serves the ends of justice." (Docket Entry No. 24.) The Court specifically found that:

> [T]his is a case involving numerous fraud charges and, due in part to the large volume of discovery, it requires additional time so as not to deny the Defendant the reasonable time necessary for effective preparation for trial by counsel of his choice. Thus, the ends of justice served outweigh the interests of the public and the Defendant in a speedy trial.

*Id.*

Shortly thereafter, Defendant replaced Kuniansky with Scheiner as his retained defense counsel. Defendant filed another motion for continuance on September 4, 2012, stating that his new attorney needed time to prepare for trial. He requested that trial be reset

6

to January 2013. The Court granted the unopposed continuance and reset trial to January 14, 2013. The Court entered an "excusable delay" order, finding that the continuance was appropriate under Section 3161(h)(7)(A) because "the ends of justice served . . . outweigh the best interest of the public, as well as the Defendant, in a speedy trial" and "failure to grant the continuance would stop further proceedings or result in a miscarriage of justice."

On December 10, 2012, Defendant filed a third motion for continuance, seeking a continuance of his rearraignment set for January 10, 2013. Counsel asked that the rearraignment be moved to February 2013 due to a scheduling conflict. The Court granted the unopposed motion and reset rearraignment for February 6, 2013. On February 6, 2013, Defendant pleaded guilty to one count of the indictment pursuant to a written Plea Agreement.

The federal Speedy Trial Act ("STA") requires that federal criminal defendants pleading not guilty be tried within 70 days of their indictment or arraignment, whichever comes later. 18 U.S.C. § 3161(c). However, section 3161(h) of the STA sets forth "a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." *Zedner v. United States*, 547 U.S. 489, 497 (2006). Specifically, delays resulting from the district court's consideration of any pretrial motion or a continuance, where the district court finds on the record that the ends of justice outweigh the interests of the public and the defendant in a speedy trial, are automatically excluded from the 70-day time limit. *See* 18 U.S.C. § 3161(h)(1), (h)(7). Defendant's claim that the Government

failed to bring him to trial within the 70-day time limit is mistaken, as he fails to exclude the delays for which the Court entered proper "excusable delay" orders.

Moreover, counsel was not ineffective in seeking a continuance in order to have adequate time to prepare for trial. Nor does Defendant establish that, but for counsel's seeking a continuance, there is a reasonable probability that the result of the trial would have been favorably different. No ineffective assistance of counsel is shown, and habeas relief is unwarranted.

B. <u>Investigation of the Case</u>

Defendant next claims that counsel failed to investigate the case before advising him to plead guilty. His claim is without merit. A defendant who claims counsel failed to investigate "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Trottie v. Stephens*, 720 F.3d 231, 243 (5th Cir. 2013); *see also Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011). Defendant's claim lacks the requisite details regarding what further investigation into each of those facts would have revealed, and how those facts would have been of substantial benefit to his defense or changed his plea. His bare allegations do not suffice to overcome the strong presumption that any decision by counsel not to investigate further was the product of reasonable professional judgment. *See Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *see also Strickland*, 466 U.S. at 690 (noting that counsel is "strongly presumed to

have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment").

Regardless, no ineffective assistance is shown. In responding to Defendant's claim, counsel Scheiner testified in his affidavit as follows:

> I was trial counsel for [Defendant] from on or about June 28, 2012, to on or about December 18, 2014, when I filed a motion to withdraw from further representation, following [Defendant's] sentencing and restitution judgment. I had initially been hired to replace [Defendant's] former counsel, Richard Kuniansky, and defend [Defendant] against a six-count indictment relating to his jewelry-sales business, Mark Five, Inc. Along with my firm, [Defendant] also employed the services of Houston attorney Michael Pena, who is Board Certified in criminal law by the Texas Board of Legal Specialization. Mr. Pena is not associated with my law firm.
>
> From at least November 2012 onward, [Defendant] independently employed attorney Joshua Sabert Lowther, his own criminal counsel, to advise him on all legal matters associated with the case. Mr. Lowther is an accomplished criminal litigator from Savannah, Georgia, whose practice focuses exclusively on criminal defense in federal trial and appellate courts nationwide. Mr. Lowther was involved in all aspects of the case, drafted most of the defendant's objections to the pre-sentence investigation report, as well as the defendant's sentencing memorandum, all of which was approved by [Defendant] prior to filing. [Defendant], Mr. Pena, Mr. Lowther and I consulted exhaustively throughout the pretrial and sentencing phases of this case, and all of the lawyers and [Defendant] ("The Defense Team") unanimously approved all decisions our team made with respect to actions and strategy.
>
> [Defendant] claims that defense counsel failed to investigate the facts of his case or his version of events during plea negotiations, thereby failing to develop facts "which could have resulted in the indictment's dismissal and or a much more favorable plea agreement." He claims he provided his attorneys "with the names and addresses of all his distributors, as well as records on hundreds of distributors who made money through his system" but that counsel "did not contact any of his distributors, [and] did not circularize the names to show overwhelming satisfaction with his system." He also claims

9

that we did not "examine his detailed records to demonstrate the significant re-orders his clients were making, which would prove a lack of fraudulent intent." He further claims that we failed to develop the facts that he never had a lawsuit or complaint filed against him in his company's 20-year history, and that he offered dissatisfied clients a money-back guarantee through his "loss protection plan," and that the Government had only "found" approximately twenty-five alleged victims during the course of their investigation.

After careful review and consideration of the information [Defendant] presented and the discovery documentation provided by the Government, The Defense Team concluded (and [Defendant] agreed) that he should plead guilty and that it would not be in his best interest, in light of his guilty plea, to try to attempt to argue that [Defendant] lacked fraudulent intent. As a matter of strategy, The Defense Team felt (and [Defendant] agreed with our assessment) that arguing a lack of fraudulent intent might indicate a lack of remorse on [Defendant's] part and, as it relates to sentencing, could possibly indicate that [Defendant] did not fully accept responsibility. Instead, we took the position that it was the Government's burden to prove which of the alleged victims had been actually defrauded, and we challenged the evidence by hiring Richard A. Jones, a forensic accountant, who prepared written reports and testified at the sentencing and restitution hearings. The trial court judge mentioned several times, on the record, that he felt Mr. Jones' testimony was persuasive.

(Docket Entry No. 110, Exhibit.)

The record shows that, for purposes of investigation for the guilty plea, Defendant was represented and advised by a defense team of no fewer than three well-known, experienced, and knowledgeable criminal defense attorneys – Scheiner, Pena, and Lowther – and a forensic consultant and a sentencing mitigation specialist. Scheiner's affidavit testimony shows that counsel and the defense experts exhaustively investigated the case and the evidence prior to recommending that Defendant plead guilty. When it was clear to the defense team that a guilty plea would be the best approach, Defendant's team focused its

attention on how to obtain the most favorable sentence possible under the facts and evidence, including consideration for acceptance of responsibility. These strategies were reasonable, and Defendant's complaints fail to rebut the strong presumption that his counsel's actions were matters of professional judgment and reasonable trial strategy. Defendant demonstrates neither deficient performance nor actual prejudice, and ineffective assistance of counsel is not shown.

Habeas relief under section 2255 is unwarranted.

C.  Factual Stipulations

Defendant further asserts that counsel was ineffective in inducing him to sign a plea agreement containing factual stipulations that enhanced his sentence. Specifically, he states that he was unaware of the sentencing consequences of his stipulations that he was the leader or organizer of a conspiracy involving five or more participants, and that he victimized more than 50 people. Defendant contends that, had he known these stipulations would automatically increase his sentence, he would have insisted that the Government be forced to prove them.

In responding to this claim, counsel Scheiner testified in his affidavit as follows:

> [Defendant] claims that he was not advised about the sentence-enhancing effects of his Plea-Agreement's factual stipulations that (a) [he] was the leader/organizer of a conspiracy involving five or more participants, and (b) [he] "victimized more than 50 people." He claims that he "had no idea what this language meant in terms of his case" and did not know that such stipulations "would have the effect of automatically increasing his sentence." He further claims that counsel "inveigled" him to agree to the Factual Basis of his Plea Agreement and that, had he been advised that these stipulations

11

would increase his sentence, he would not have agreed to this "boilerplate language" or to relieve the Government of its burden to prove those facts.

[A]ll of the defense lawyers, individually and collectively, explained to [Defendant] the sentencing ramifications of the factual stipulations, to which he agreed. In particular, we discussed in great detail the Federal Sentencing Guidelines and how factual stipulations may affect guideline- and non-guideline sentences. I am certain that [Defendant] entered into his plea agreement voluntarily, knowingly, and intelligently in all respects and that no one on The Defense Team inveigled him to do so.

\* \* \* \*

In my meetings, emails and telephone conversations with [Defendant], we reviewed the indictments, the elements of the offenses, and the factual and other provisions of the proposed Plea Agreement. Mr. Lowther and Mr. Pena did so with [Defendant] as well. The Defense Team advised [Defendant] about all of his rights, including (but not limited to) the right to proceed to trial and the right to testify in his own defense at guilt/innocence, as well as the right to testify on his own behalf at sentencing. [Defendant's] position was that he wished to enter into a plea agreement, in order to avoid a trial and possibly gain, among other things, the potential sentencing benefit that may accompany an acceptance of responsibility. Throughout our meetings, I questioned [Defendant] on these topics and others. Before [Defendant] signed the Plea Agreement, I fully explained to [him] his rights with respect to the pending indictment. I reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements, and I fully and carefully explained to [Defendant] the Guideline provisions which might apply in this case, as well as the possibility that the Trial Court could assess a non-guideline sentence. [Defendant] acknowledged and appeared to understand the sentence-enhancing effects of the Factual Basis of his Plea Agreement. My understanding is that the other lawyers on The Defense Team also covered these topics with [Defendant].

In reviewing my communications regarding this case, I note that, in addition to the personal meetings and telephone calls with the client and among members of The Defense Team, as well as Certified Public Accountant Richard A. Jones and Sentencing Mitigation Specialist Tess Lopez (who analyzed the case and flew from California to Texas, to personally meet with [Defendant] and to compile material which the Trial Court might potentially

12

> view as favorable to [Defendant]), the various parties exchanged 900+ emails discussing actions and strategies for [Defendant's] case. The collective effort to bring [Defendant] the best result was thorough and exhaustive, and he was free to question in detail each, individual member of his Defense Team and his experts (and he often did so). It is my assessment that [Defendant] entered into his Plea Agreement voluntarily, knowingly and intelligently, with a clear understanding of the nature and potential consequences of every significant action that he took or chose not to take, in this case.

(Docket Entry No. 110, Exhibit.)

Moreover, the Court asked Defendant during the plea hearing whether anyone had threatened him or tried to coerce him to plead guilty; Defendant replied, "No, Your Honor." (Docket Entry No. 107, p. 4.) Defendant's bald allegation here that defense counsel had forced or "inveigled" him to plead guilty is insufficient to refute his statement made in open court and on the record that no one had coerced his plea.

In his reply to the Government's response, Defendant specifically complains that the Factual Stipulations counsel "inveigled" him to sign were incorrect and proved that counsel had not "bothered" to investigate the facts of the case. Defendant points out that, although the Factual Stipulations stated he was "an organizer/leader of criminal activity that involved five or more participants," the Government had agreed in the February 6, 2014, PSR that the conspiracy involved fewer than five criminal participants. Defendant's argument ignores the fact that in the revised PSR dated February 18, 2014, the Government stated that, "[Defendant] was the organizer of the conspiracy, which involved more than five criminal participants[.]" (Docket Entry No. 52, ¶ 6.) This statement was not changed or otherwise amended in the second revision dated February 24, 2014. (Docket Entry No. 58.) Thus,

13

contrary to Defendant's claim, defense counsel did not unilaterally increase Defendant's sentence by stipulating that the conspiracy involved more than five criminal participants.

Although defense counsel and Defendant disagree as to whether the defense team explained the sentencing consequences of the Factual Stipulations, Defendant does not prevail under *Strickland*. Defendant fails to establish that, but for specific deficient conduct by counsel, there is a reasonable probability that he would not have pleaded guilty and would have insisted on proceeding to trial, or that this Court would have imposed a lower sentence.

Habeas relief under section 2255 is unwarranted.

D.      Downward Departure

Defendant also argues that counsel failed to present meritorious arguments for a downward departure at the sentencing hearing. Defendant admits that counsel did make some arguments for a downward departure, but that he neglected to raise all of the possible arguments. Defendant contends that counsel should have also argued (1) that a too-lengthy sentence does not promote respect for the law; (2) that a first-time criminal offender such as Defendant merits a downward variance, and (3) that the length of time that elapsed before Defendant's criminal offense justifies a downward departure.

Defendant's arguments are refuted by the record. Counsel raised these and similar arguments in Defendant's sentencing memorandum, which this Court carefully and thoroughly reviewed prior to sentencing. Counsel argued that Defendant was 54-years of

age and had no criminal history, and that a sentence substantially below 33–41 months would reflect the seriousness of the crime while promoting respect for the law. (Docket Entry No. 70.) That counsel's arguments found no purchase at sentencing does not constitute, or even evince, ineffective assistance. *See Urista v. United States*, 2015 WL 4588352, at *3 (N.D. Tex. July 30, 2015); *see also Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983).

Habeas relief is unwarranted on this claim.

E.     Breach of Plea Agreement

As his final ground for relief, Defendant contends that counsel should have objected to the Government's breach of the plea agreement, in that the Government failed to recommend a low-end Guideline sentence. According to Defendant, the Government agreed in the Plea Agreement to recommend a sentence at the lower end of the applicable guideline range. He argues that the Government failed to abide by the agreement because it recommended a 63-month sentence, which was the maximum sentence.

Defendant misconstrues the record, and his factual allegations are incorrect. Defendant pleaded guilty to one count of conspiracy to commit mail fraud and wire fraud, which carried a statutory maximum penalty of imprisonment of up to twenty years and a fine of $250,000 or more. 18 U.S.C. § 3571. The Government agreed in the Plea Agreement to recommend to the Court a sentence at the low end of the applicable Guideline range. (Docket Entry No. 34, at ¶ 12.) At the sentencing hearing, the Government reiterated the

guidelines sentence range of 63–78 months, and asked the Court to sentence Defendant at the low end of that range. According to the Government's sentencing memorandum, this recommendation was based on a total offense level of 26 and a criminal history category of I. (Docket Entry No. 42, p. 2.)

The Government made clear its recommendation at the sentencing hearing, as shown by the following excerpt:

> THE COURT: I guess we are left with a philosophical question about sentencing[.]
>
> THE GOVERNMENT: [R]ight. And I am not here today to maximize [Defendant's] sentence, and I don't think that an entirely punitive sentence is even appropriate in this case[.]
>
> THE COURT: I agree with that[.]
>
> THE GOVERNMENT: I am not suggesting a 120-month sentence Your Honor. I mean, I think the guidelines range is 63 to 78. *I am suggesting a low ends guideline range*[.]

(Sentencing Transcript, pp. 82–83, emphasis added.)

However, the Court did not accept the Government's recommendation, and asked the probation officer to calculate a new guidelines range based on a lower proposed loss amount, as follows:

> THE COURT: I am comfortable that the fraud in this case exceeded $200,000. I say that with a high degree of confidence. I don't know that I think it, with any equally high degree of confidence exceeded 400,000. If I were to use that range, Ms. Laredo or Ms. Voss, where would we be?

>   PROBATION OFFICER: [Level] 24, 51 to 63 months[.]
>
>   THE COURT: So we are agreed it's Level 24. Everybody agree on that.
>
>   THE GOVERNMENT: Yes, Your Honor.
>
>   \* \* \* \*
>
>   THE COURT: [E]ven if I am wrong about the amount of the harm, I think the sentence I am going to pronounce is the correct one under the post-*Booker* regimen, that is, with the guidelines no longer being mandatory, I think this is the right sentence[.] So, my *Booker* sentence is as follows: Defendant is sentenced to 63 months incarceration[.]

*Id.*, p. 92.

Consequently, the Government's low end recommendation of 63 months, at Level 26, was not accepted by this Court, as the Court did not agree with the Government's higher loss amount. The Court recalculated the sentencing range at Level 24, and the same 63 months became the high end of the guidelines range for that level. The Court then pronounced sentence of 63 months' incarceration, with the amount of restitution to be determined at a later date.

The Government did not breach the Plea Agreement, and counsel was not ineffective in failing to argue that it did. Relief under section 2255 is unwarranted.

## V. CONCLUSION

Defendant's motion for relief under section 2255 (Docket Entry No. 95) is **DENIED**. A certificate of appealability is **DENIED**.

The Clerk of Court is **ORDERED** to administratively close Defendant's ancillary civil case in C.A. No. H-15-2052.

Signed at Houston, Texas, on this the 27th day of February, 2017.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE